UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------------X

In re:

GERSHON BARKANY,                                    Chapter 7
                                                   Case No. 14-72941 (LAS)

            Debtor.

-------------------------------------------------------------------------------------X

MARK FRANKEL, AS CHAPTER 7 TRUSTEE
FOR THE ESTATE OF GERSHON BARKANY,

            Plaintiffs,

            vs.                                    Adv. Proc. No. 16-_____
                                                   (LAS)

ZVI BLOOM, ALAN GERSON, WENDY GERSON,
AARON JUNGREIS, RUTH JUNGREIS, YOSEF KATZ,
YOSHA FAMILY CORP., JONATHAN LEIFER,
MURRAY LEIFER, SARAH LEIFER, SAM LESSER,
EDWARD LOWY, MORDECHAI SHULMAN,
WHITEFISH GROUP, LLC, and YAHAD
FOUNDATION, INC.,

            Defendants.

-------------------------------------------------------------------------------------X

## COMPLAINT TO AVOID AND RECOVER
## FRAUDULENT TRANSFERS AND OBJECTION TO CLAIMS

Plaintiff, Mark Frankel, as Chapter 7 Trustee ("Plaintiff" or "Trustee") for the Estate

of Gershon Barkany ("Barkany" or the "Debtor"), by and through his counsel Hahn &

Hessen LLP, hereby files this Complaint against the above named defendants pursuant to

Part VII of the Bankruptcy Rules seeking to (i) avoid certain fraudulent transfers made by

Barkany and/or entities controlled by him to defendants and to recover the value thereof,

pursuant to 11 U.S.C. (the "Bankruptcy Code") §§ 544, 550 and 551 and applicable New

York state law, (ii) object to claims; and (iii) for other relief, and alleges as follows:

6172778.4

## THE NATURE OF THE ACTION

1.      This adversary proceeding arises from a massive Ponzi Scheme perpetrated by Barkany, who held himself out to investors to be a successful financial advisor and real estate investor. As it turns out, Barkany's representations to his investors were false, as substantially all of Barkany's income was generated from the sale of investments in fraudulent real estate and investment transactions that were an integral part of Barkany's Ponzi Scheme.

2.      Rather than utilizing investor and lender funds to invest in loan and real estate transactions, the majority of the funds were diverted by Barkany, without the consent of such investors/lenders, for other purposes, including (a) the repayment of other investors/lenders their promised rate of interest or return, (b) gambling in Atlantic City or the repayment of gambling debts, (c) payment to third parties including so-called "charitable donations", and (d) Barkany's personal uses.

3.      Defendants were among the beneficiaries of Barkany's Ponzi Scheme.   Upon information and belief, between January 2008 and December 2010, defendants received transfers from Barkany, and various entities he controlled, of proceeds from his Ponzi Scheme of over $10.9 million (collectively, the "Transfers"[1]).   These Transfers were an important part of Barkany' s fraud in that they helped create the facade of a successful, honest businessman to impress potential investors.

4.      Through this adversary proceeding, Plaintiff, as chapter 7 Trustee of Barkany's Estate, seeks the return of the Transfers received directly or indirectly by defendants.

---

[1]    The term Transfers shall include the Bloom Transfers, Gerson Transfers, Jungreis Transfers, Katz/Yosha Transfers, Jonathan Leifer Transfers, Murray/Sarah Leifer Transfers, Lesser Transfers, Lowy Transfers, Shulman Transfers, Whitefish Transfers and Yahad Transfers, all of which are defined below.

5.      Defendants did not provide fair consideration or reasonably equivalent value in exchange for the Transfers they received.

6.      Upon information and belief, at all relevant times to this Complaint, Barkany and his affiliated entities were insolvent.  Each of the Transfers from Barkany and his entities to defendants was made with actual intent to hinder, delay and defraud his creditors.

7.      The Trustee seeks an order that: (a) the Transfers received directly or indirectly by defendants were fraudulent Transfers under applicable law; (b) each of defendants is liable to the Trustee for an amount equaling the amount of the Transfers such defendant directly or indirectly received; and (c) awards attorney's fees, costs and interest to the Trustee.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).

9.      This adversary proceeding has been referred to this Court pursuant to 28 U.S.C. § 157(a).

10.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (E), (H) and (O).

11.     Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. § 1409(a).

## THE PARTIES

### A.      The Trustee

12.     Barkany is an individual who resides in New York State.

3

13.    On June 25, 2014 (the "Petition Date"), Joseph Rosenberg, Saul Kessler and Marina District Development Co., LLC a/k/a the Borgata Hotel Casino and Spa filed an involuntary petition for relief under chapter 7 of title 11 of the Bankruptcy Code against the Debtor in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").

14.    On January 14, 2015, the Bankruptcy Court entered an order for relief against the Debtor.

15.    By order dated December 29, 2015, Trustee Mark A. Frankel was appointed as the permanent chapter 7 trustee of the Debtor's estate.

**B.    The Defendants**

16.    Defendant Zvi Bloom ("Bloom"), upon information and belief, is an individual residing in Queens County, New York.

17.    Defendants Alan Gerson and Wendy Gerson, upon information and belief, are husband and wife and reside in Nassau County, New York.

18.    Defendants Aaron Jungreis and Ruth Jungreis, upon information and belief, are husband and wife and reside in Nassau County, New York.

19.    Defendant Yosef Katz ("Katz"), upon information and belief, is an individual residing in Queens County, New York.

20.    Defendant Yosha Family Corp. ("Yosha") is a corporation organized under the laws of the State of New York with offices in Queens County, New York. Upon information and belief, defendant Katz is an officer and shareholder of Yosha.

21.    Defendant Jonathan Leifer, upon information and belief, is an individual residing in Nassau County, New York.

4

22.      Defendants Murray Leifer and Sarah Leifer, upon information and belief, are husband and wife and reside in Nassau County, New York.

23.      Defendant Sam Lesser ("Lesser"), upon information and belief, is an individual residing in Queens County, New York.

24.      Defendant Edward Lowy ("Lowy"), upon information and belief, is an individual residing in Nassau County, New York.

25.      Defendant Mordechai Shulman ("Shulman"), upon information and belief, is an individual residing in Rockland County, New York.

26.      Defendant Whitefish Group, LLC ("Whitefish") is a limited liability company organized under the laws of the State of Delaware with offices in Nassau County, New York.   Upon information and belief, Whitefish is owned by Johnathan Leifer and Edward Lowy.

27.      Defendant Yahad Foundation, Inc. ("Yahad"), upon information and belief, is a not-for-profit corporation organized under the laws of the State of New York with offices in Kings County, New York.

## STATEMENT OF FACTS

**A.      The Ponzi Scheme**

28.      Barkany was the mastermind, architect and main perpetrator of a Ponzi Scheme (the "Ponzi Scheme") which was designed to separate prospective investors/lenders from their money.

29.      Between January of 2008 and March of 2013, Barkany conducted this Ponzi Scheme by which approximately $70 million was stolen from various people and entities.

30.    To investors and lenders, Barkany held himself out to be a successful financial advisor and real estate investor. As it turns out, Barkany's representations to his investors/lenders were false, as substantially all of Barkany's income was generated from the sale of fraudulent investments in real estate and other investment transactions that were an integral part of Barkany's Ponzi Scheme.

31.    Barkany operated the Ponzi Scheme by soliciting investments and/or loans for real estate transactions from his victims.  Barkany held himself out to investors and lenders as a successful financial advisor and real estate investor, when in fact, his representations were false, as substantially all of Barkany's income was generated from the sale of fraudulent investments in real estate and other investment transactions.  Nearly none of the real estate transactions were real and the investments/loans were diverted by Barkany, without consent of the investors/lenders, for other purposes including (a) the repayment of other investors/lenders their promised rate of interest or return, (b) gambling in Atlantic City or the repayment of gambling debts, (c) third parties including so-called "charitable donations", and (d) Barkany's personal uses.

32.    Barkany has admitted to his Ponzi Scheme in a sworn Affidavit of Confession of Judgment (the "Affidavit") in which he describes the means he employed to defraud investors/lenders of tens of millions of dollars.

33.    In the Affidavit, Barkany admits that:

> (a) [he] repeatedly engaged in fraudulent and unauthorized practices and conveyances which victimized the Creditors.  [He] employed a variety of means in this fraud, including the solicitation of funds for real estate and loan transactions which, unbeknownst to [Creditors], were not as represented or altogether non-existent.
>
> (b) In each case, the Creditors provided funds for specific purposes and required repayment within a fixed and agreed period of time. The transactions involved loans by various Creditors directly to

6

> [Barkany] or [entities controlled by Barkany]. [Barkany] also solicited these parties to participate in various real estate transactions involving commercial or residential properties.
>
> (c) The loans and real estate transactions were generally shams, fabricated by [him] to serve as a vehicle to separate Creditors from their money. . .
>
> (d) While some of the earlier transactions did produce returns, when the transactions did not do so, [he] would resort to reporting fictitious or falsely inflated returns, making some payments and, on certain occasions, trying to get the creditors to roll over payments into new transactions. In reality, their money had been used to pay off other creditors or was otherwise misappropriated by [him]. . . .

Affidavit, pp. 2-3.

34. On March 27, 2013, the United States Attorney's Office for the Eastern District of New York filed a Complaint and Affidavit in Support of Arrest Warrant against Barkany in the U.S. District Court captioned, *United States of America v. Barkany*, No. 13-CR-0362 (LDW) (ARL).

35. On June 25, 2013, an Information was filed against Barkany charging him with wire fraud and the U.S. Attorney's Office sought a criminal forfeiture action against Barkany's assets [No. 13-CR-0362, ECF No. 34]. According to the Information, Barkany devised, implemented, supervised and executed a scheme to fraudulently induce investors to give him and certain Barkany entities monies supposedly for the purchase of real estate that he would subsequently sell for a profit. Instead of using the investors' monies to purchase real estate, he used the funds to pay other investors, donated it to charity, lost it gambling in Atlantic City, and otherwise used it for his own benefit.

36. On or about June 26, 2013, Barkany pled guilty to wire fraud [No. 13-CR-0362, ECF No. 44], and accepted a forfeiture judgment in the amount of $62 million minus any monies or assets that he repaid to his victims. As part of his guilty plea, Barkany

admitted that "[o]n or about and between December 2009 and March 2013, … [he] knowingly and intentionally within the Eastern District of New York devise[d] a scheme and artifice to defraud investors and to obtain money and property by means of false and fraudulent pretenses … [and used] the wire transfers via the Federal Reserve network to execute that scheme to defraud." [No. 13-CR-0362, ECF No. 44, pp. 50-51]. As part of his guilty plea, Barkany waived his right to challenge any jail sentence that was 121 months or less. As part of his plea deal, he requested, and was given, home detention until the time of sentencing as he asserted that he wanted to conduct business in order to allegedly repay his victims. Barkany's guilty plea was approved on August 7, 2013 [No. 13-CR-0362, ECF No. 46].

37.     Barkany is currently incarcerated and awaiting sentencing on the criminal charges.

**B.     Barkany's Transfers to Bloom**

38.     The Trustee has identified transfers during the period from May 2010 through November 2010 totaling at least $583,416.66 from Barkany and the entities he controlled to or for the benefit of defendant Bloom  Those transfers are the following:

| Date | Amount |
|---|---|
| 05/04/2010 | $160,000.00 |
| 06/16/2010 | $281,250.00 |
| 11/03/2010 | $17,166.66 |
| 11/03/2010 | $125,000.00 |
| **Total:** | **$583,416.66** |

39.     The table above reflects the Trustee's present knowledge of the aggregate amount of transfers made to defendant Bloom by Barkany or his entities. During the course of this proceeding the Trustee may learn (through discovery or otherwise) of additional

transfers made by, or on behalf of, Barkany to defendant Bloom. The Trustee is seeking to avoid and recover all such transfers, whether such transfers presently are reflected in the above table or not. Collectively, all transfers made by, or on behalf of, Barkany to or for the benefit of Bloom (whether such transfers presently are reflected in the above table or not) are referred to herein as the "Bloom Transfers".

40. Defendant Bloom did not provide fair consideration or reasonably equivalent value for the Bloom Transfers he received.

41. Upon information and belief, most, if not all, of the Bloom Transfers were made using proceeds of the Ponzi Scheme.

42. Barkany used various means to make the Bloom Transfers to Bloom. Sometimes, he wrote checks directly to defendant Bloom from various bank accounts in his name or which he controlled. Upon information and belief, at other times, Barkany may have made direct cash payments to defendant Bloom.

43. Upon information and belief, although Bloom had known for some time that Barkany was involved in a Ponzi Scheme and that the Bloom Transfers were the fraudulent proceeds of Barkany's Ponzi Scheme, Bloom has refused to disgorge these funds.

44. Upon information and belief, the Bloom Transfers were made by Barkany with the actual intent to hinder, delay or defraud Barkany's creditors or future creditors.

**C.    Barkany's Transfers to Alan Gerson and Wendy Gerson**

45. The Trustee has identified transfers during the period from February 2008 through October 2008 totaling at least $528,270.00 from Barkany and the entities he controlled to or for the benefit of defendants Alan Gerson and Wendy Gerson (collectively, the "Gersons"). Those transfers are the following:

| Date | Amount |
|------|--------|
| 02/28/2008 | $93,000.00 |
| 02/28/2008 | $100,000.00 |
| 08/05/2008 | $153,270.00 |
| 08/20/2008 | $62,000.00 |
| 09/05/2008 | $20,000,00 |
| 10/08/2008 | $50,000.00 |
| 10/27/2008 | $15,000.00 |
| 10/27/2008 | $35,000,00 |
| **Total:** | **$528,270.00** |

46.     The table above reflects the Trustee's present knowledge of the aggregate amount of transfers made to the Gersons by Barkany or his entities.  During the course of this proceeding the Trustee may learn (through discovery or otherwise) of additional transfers made by, or on behalf of, Barkany to the Gersons.  The Trustee is seeking to avoid and recover all such transfers, whether such Transfers presently are reflected in the above table or not.  Collectively, all transfers made by, or on behalf of, Barkany to or for the benefit of the Gersons (whether such Transfers presently are reflected in the above table or not) are referred to herein as the "Gerson Transfers".

47.     Defendant Gersons did not provide fair consideration or reasonably equivalent value for the Gerson Transfers they received.

48.     Upon information and belief, most, if not all, of the Gerson Transfers were made using proceeds of the Ponzi Scheme.

49.     Barkany used various means to make the Gerson Transfers to the Gersons. Sometimes, he wrote checks directly to the Gersons from various bank accounts in his name or which he controlled.  Upon information and belief, at other times, Barkany may have made direct cash payments to the Gersons.

10

50.     Upon information and belief, although the Gersons had known for some time that Barkany was involved in a Ponzi Scheme and that the Gerson Transfers were the fraudulent proceeds of Barkany's Ponzi Scheme, they have refused to disgorge these funds.

51.     Upon information and belief, the Gerson Transfers were made by Barkany with the actual intent to hinder, delay or defraud Barkany's creditors or future creditors.

**D.      Barkany's Transfers to Aaron Jungreis and Ruth Jungreis**

52.     The Trustee has identified transfers during the period from February 2008 through June 2010 totaling at least $3,397,246.81 from Barkany and the entities he controlled to defendants Aaron and Ruth Jungreis (collectively, the "Jungreises").  Those transfers are the following:

| Date | Amount |
| --- | --- |
| 02/29/2008 | $135,833.33 |
| 04/11/2008 | $24,000.00 |
| 07/17/2008 | $10,873.33 |
| 09/08/2008 | $22,500.00 |
| 09/08/2008 | $16,249.99 |
| 10/24/2008 | $215,000.00 |
| 10/30/2008 | $10,873.33 |
| 11/13/2008 | $5,410.00 |
| 11/18/2008 | $541,000.00 |
| 12/12/2008 | $1,444.44 |
| 12/12/2008 | $10,873.33 |
| 01/21/2009 | $5,416.67 |
| 02/03/2009 | $5,416.67 |
| 02/10/2009 | $425,000.00 |
| 02/10/2009 | $580,000.00 |
| 02/27/2009 | $115,000.00 |
| 03/02/2009 | $100,000.00 |
| 03/13/2009 | $5,000.00 |
| 03/13/2009 | $265,000.00 |
| 03/16/2009 | $10,873.38 |
| 04/08/2009 | $25,749.00 |
| 07/09/2009 | $230,000.00 |
| 10/30/2009 | $10,833.34 |
| 05/04/2010 | $224,900.00 |

| 06/15/2010 | $400,000.00 |
|---|---|
| **Total:** | **$3,397,246.81** |

53.     The table above reflects the Trustee's present knowledge of the aggregate amount of transfers made to defendants the Jungreises by Barkany or his entities.  During the course of this proceeding the Trustee may learn (through discovery or otherwise) of additional transfers made by, or on behalf of, Barkany to defendants Aaron and Ruth Jungreis.  The Trustee is seeking to avoid and recover all such transfers, whether such transfers presently are reflected in the above table or not.  Collectively, all transfers made by, or on behalf of, Barkany to or for the benefit of defendants the Jungreises (whether such transfers presently are reflected in the above table or not) are referred to herein as the "Jungreis Transfers".

54.     Defendants Jungreises did not provide fair consideration or reasonably equivalent value for the Jungreis Transfers they received.

55.     Upon information and belief, most, if not all, of the Jungreis Transfers were made using proceeds of the Ponzi Scheme.

56.     Barkany used various means to make the Jungreis Transfers to the Jungreises. Sometimes, he wrote checks directly to the Jungreises from various bank accounts in his name or which he controlled.  Upon information and belief, at other times, Barkany may have made direct cash payments to the Jungreises.

57.     Upon information and belief, although the Jungreises had known for some time that Barkany was involved in a Ponzi Scheme and that the Jungreis Transfers were the fraudulent proceeds of Barkany's Ponzi Scheme, they have refused to disgorge these funds.

58.    Upon information and belief, the Jungreis Transfers were made by Barkany with the actual intent to hinder, delay or defraud Barkany's creditors or future creditors.

E.    **Barkany's Transfers to Katz and Yosha**

59.    The Trustee has identified transfers during the period from July 2008 through September 2010 totaling at least $319,712.05 from Barkany and the entities he controlled to defendants Katz and Yosha. Those transfers are the following:

| DATE | AMOUNT |
|------|--------|
| 07/02/2008 | $5,000.00 |
| 07/08/2008 | $1,500.00 |
| 07/31/2008 | $3,000.00 |
| 08/22/2008 | $3,000.00 |
| 11/25/2008 | $8,000.00 |
| 12/23/2008 | $9,500.00 |
| 01/07/2009 | $2,310.00 |
| 04/13/2009 | $88,250.00 |
| 07/28/2009 | $520.83 |
| 07/28/2009 | $520.83 |
| 09/09/2009 | $520.83 |
| 09/17/2009 | $50,000.00 |
| 10/08/2009 | $520.83 |
| 11/05/2009 | $120.97 |
| 11/05/2009 | $2,500.00 |
| 11/05/2009 | $2,500.00 |
| 11/05/2009 | $520.83 |
| 12/07/2009 | $312.50 |
| 12/07/2009 | $520.83 |
| 01/11/2010 | $312.50 |
| 01/12/2010 | $520.83 |
| 02/12/2010 | $312.50 |
| 02/12/2010 | $520.83 |
| 03/09/2010 | $312.50 |
| 03/09/2010 | $520.83 |
| 04/14/2010 | $312.50 |
| 04/14/2010 | $520.83 |
| 05/06/2010 | $134,760.29 |
| 05/12/2010 | $312.50 |
| 05/12/2010 | $521.13 |
| 06/09/2010 | $520.83 |
| 07/19/2010 | $520.83 |

13

| | |
|---|---|
| 08/17/201.0 | $520.83 |
| 09/21/2010 | $104.17 |
| **Total:** | **$319,712.05** |

60.    The table above reflects the Trustee's present knowledge of the aggregate amount of transfers made to Katz and Yosha by Barkany or his entities.  During the course of this proceeding the Trustee may learn (through discovery or otherwise) of additional transfers made by, or on behalf of, Barkany to Katz and Yosha.  The Trustee is seeking to avoid and recover all such transfers, whether such transfers presently are reflected in the above table or not.  Collectively, all transfers made by, or on behalf of, Barkany to or for the benefit of Katz and Yosha (whether such transfers presently are reflected in the above table or not) are referred to herein as the "Katz/Yosha Transfers".

61.    Defendants Katz and Yosha did not provide fair consideration or reasonably equivalent value for the Katz/Yosha Transfers they received.

62.    Upon information and belief, most, if not all, of the Katz/Yosha Transfers were made using proceeds of the Ponzi Scheme.

63.    Barkany used various means to make the Katz/Yosha Transfers to defendants Katz and Yosha.  Sometimes, he wrote checks directly to Katz and Yosha from various bank accounts in his name or which he controlled.  Upon information and belief, at other times, Barkany may have made direct cash payments to Katz and Yosha.

64.    Upon information and belief, although Katz and Yosha had known for some time that Barkany was involved in a Ponzi Scheme and that the Katz/Yosha Transfers were the fraudulent proceeds of Barkany's Ponzi Scheme, Katz and Yosha have refused to disgorge these funds.

14

65.    Upon information and belief, the Katz/Yosha Transfers were made by Barkany with the actual intent to hinder, delay or defraud Barkany's creditors or future creditors.

## G.    Barkany's Transfers to Jonathan Leifer

66.    The Trustee has identified transfers during the period from April 2008 through September 2010 totaling at least $3,929,308.05 from Barkany and the entities he controlled to defendant Jonathan Leifer.  Those transfers are the following:

| Date | Amount |
|---|---|
| 04/16/2008 | $10,000.00 |
| 10/08/2008 | $270.75 |
| 10/29/2008 | $283,000.00 |
| 11/10/2008 | $541.66 |
| 11/10/2008 | $1,677.41 |
| 11/28/2008 | $8,000.00 |
| 11/28/2008 | $2,580.48 |
| 12/08/2008 | $2,708.33 |
| 1.2/08/2008 | $3,333.33 |
| 12/17/2008 | $200,000.00 |
| 12/30/2008 | $7,444.43 |
| 12/30/2008 | $5,416.66 |
| 01/08/2009 | $2,708.33 |
| 02/02/2009 | $1,750.00 |
| 02/03/2009 | $275,030.00 |
| 02/10/2009 | $2,708.33 |
| 02/1812009 | $180,000.00 |
| 02/18/2009 | $12,375.00 |
| 02/23/2009 | $14,500.00 |
| 02/23/2009 | $400,000.00 |
| 03/12/2009 | $2,708.33 |
| 03/13/2009 | $220,000.00 |
| 04/07/2009 | $2,708.33 |
| 04/08/2009 | $612.90 |
| 04/29/2009 | $400,000.00 |
| 05/04/2009 | $300,000.00 |
| 05/05/2009 | $2,708.33 |
| 05/05/2009 | $3,166.67 |
| 05/08/2009 | $7,833.33 |
| 05/21/2009 | $13,250.00 |
| 06/03/2009 | $75,000.00 |

15

| Date | Amount |
|------|--------|
| 06/19/2009 | $7,833.33 |
| 06/22/2009 | $2,708.33 |
| 06/22/2009 | $3,166.67 |
| 06/22/2009 | $1,300.00 |
| 07/06/2009 | $470,000.00 |
| 07/06/2009 | $7,833.33 |
| 07/07/2009 | $2,708.33 |
| 07/07/2009 | $1,300.00 |
| 07/07/2009 | $1,979.17 |
| 07/17/2009 | $62,500.00 |
| 08/06/2009 | $2,708.33 |
| 08/06/2009 | $957.67 |
| 08/06/2009 | $510.75 |
| 08/06/2009 | $1,300.00 |
| 08/06/2009 | $1,460.75 |
| 08/18/2009 | $162,500.00 |
| 09/15/2009 | $2,708.33 |
| 09115/2009 | $62,500.00 |
| 09/15/2009 | $989.58 |
| 09/15/2009 | $1,300.00 |
| 09/15/2009 | $50,000.00 |
| 09/15/2009 | $6,197.26 |
| 10/23/2009 | $2,708.33 |
| 10/23/2009 | $1,300.00 |
| 11/15/2009 | $2,708.33 |
| 11/16/2009 | $1,300.00 |
| 12/14/2009 | $2,708.33 |
| 12/14/2009 | $1,300.00 |
| 12/14/2009 | $1,726.03 |
| 01/12/2010 | $2,708.33 |
| 01/12/2010 | $1,300.00 |
| 02/18/2010 | $2,708.33 |
| 02/18/2010 | $2,500.00 |
| 02/18/2010 | $2,500.00 |
| 02/18/2010 | $1,300.00 |
| 03/19/2010 | $2,708.33 |
| 03/19/2010 | $1,300.00 |
| 04/19/2010 | $2,708.33 |
| 04/19/2010 | $1,300.00 |
| 04/19/2010 | $2,500.00 |
| 05/04/2010 | $203,763.43 |
| 05/17/2010 | $2,708.33 |
| 05/17/2010 | $1,300.00 |
| 06/14/2010 | $2,708.33 |
| 06/14/2010 | $1,300.00 |

| Date | Amount |
|------|--------|
| 07/29/2010 | $1,300.00 |
| 08/05/2010 | $2,708.33 |
| 08/05/2010 | $2,708.33 |
| 08/06/2010 | $1,300.00 |
| 09/08/2010 | $250,000.00 |
| 09/08/2010 | $2,184.14 |
| 09/08/2010 | $120,000.00 |
| 09/08/2010 | $1,048.39 |
| **Total:** | **$3,929,308.05** |

67.     The table above reflects the Trustee's present knowledge of the aggregate amount of transfers made to Jonathan Leifer by Barkany or his entities.  During the course of this proceeding the Trustee may learn (through discovery or otherwise) of additional transfers made by, or on behalf of, Barkany to Jonathan Leifer.  The Trustee is seeking to avoid and recover all such transfers, whether such transfers presently are reflected in the above table or not.  Collectively, all transfers made by, or on behalf of, Barkany to or for the benefit of Jonathan Leifer (whether such transfers presently are reflected in the above table or not) are referred to herein as the "Jonathan Leifer Transfers".

68.     Defendant Jonathan Leifer did not provide any consideration or reasonably equivalent value for the Jonathan Leifer Transfers he received.

69.     Upon information and belief, most, if not all, of the Jonathan Leifer Transfers were made using proceeds of the Ponzi Scheme.

70.     Barkany used various means to make the Jonathan Leifer Transfers to defendant Jonathan Leifer.  Sometimes, he wrote checks directly to Jonathan Leifer from various bank accounts in his name or which he controlled.  Upon information and belief, at other times, Barkany may have made direct cash payments to Jonathan Leifer.

17

71.     Upon information and belief, although Jonathan Leifer had known for some time that Barkany was involved in a Ponzi Scheme and that the Jonathan Leifer Transfers were the fraudulent proceeds of Barkany's Ponzi Scheme, Jonathan Leifer has refused to disgorge these funds.

72.     Upon information and belief, the Jonathan Leifer Transfers were made by Barkany with the actual intent to hinder, delay or defraud Barkany's creditors or future creditors.

**H.     Barkany's Transfers to Murray Leifer and Sarah Leifer**

73.     The Trustee has identified transfers during the period from February 2008 through August 2009 totaling at least $636,500.01 from Barkany and the entities he controlled to defendants Murray Leifer and Sarah Leifer.  Those transfers are the following:

| Date | Amount |
|---|---|
| 02/12/2009 | $16,500.00 |
| 05/05/2009 | $6,666.67 |
| 06/08/2009 | $6,666.67 |
| 07/07/2009 | $400,000.00 |
| 07/07/2009 | $6,666.67 |
| 08/18/2009 | $200,000.00 |
| **Total:** | **$636,500.01** |

74.     The table above reflects the Trustee's present knowledge of the aggregate amount of transfers made to Murray Leifer and Sarah Leifer by Barkany or his entities. During the course of this proceeding the Trustee may learn (through discovery or otherwise) of additional transfers made by, or on behalf of, Barkany to Murray Leifer and Sarah Leifer. The Trustee is seeking to avoid and recover all such transfers, whether such transfers presently are reflected in the above table or not.  Collectively, all transfers made by, or on behalf of, Barkany to or for the benefit of Murray Leifer and Sarah Leifer (whether such

18

transfers presently are reflected in the above table or not) are referred to herein as the "Murray/Sarah Leifer Transfers".

75.     Defendants Murray and Sarah Leifer did not provide fair consideration or reasonably equivalent value for the Murray/Sarah Leifer Transfers they received.

76.     Upon information and belief, most, if not all, of the Murray/Sarah Leifer Transfers were made using proceeds of the Ponzi Scheme.

77.     Barkany used various means to make the Murray/Sarah Leifer Transfers to defendants Murray and Sarah Leifer.  Sometimes, he wrote checks directly to Murray and Sarah Leifer from various bank accounts in his name or which he controlled.  Upon information and belief, at other times, Barkany may have made direct cash payments to Murray and Sarah Leifer.

78.     Upon information and belief, although Murray and Sarah Leifer had known for some time that Barkany was involved in a Ponzi Scheme and that the Murray/Sarah Leifer Transfers were the fraudulent proceeds of Barkany's Ponzi Scheme, Murray and Sarah Leifer have refused to disgorge these funds.

79.     Upon information and belief, the Murray/Sarah Leifer Transfers were made by Barkany with the actual intent to hinder, delay or defraud Barkany's creditors or future creditors.

**I.     Barkany's Transfers to Lesser**

80.     The Trustee has identified transfers during the period from April 2008 through October 2010 totaling at least $118,589.92 from Barkany and the entities he controlled to defendant Lesser.  Those transfers are the following:

| Date | Amount |
|------|--------|
| 04/14/2008 | $7,700.00 |

19

| Date | Amount |
|---|---|
| 05/16/2008 | $2,500.00 |
| 05/20/2008 | $1,875.00 |
| 05/20/2008 | $11,000.00 |
| 06/06/2008 | $4,000.00 |
| 07/15/2008 | $1,000.00 |
| 07/28/2008 | $4,800.00 |
| 09/15/2008 | $15,500.00 |
| 12/05/2008 | $15,000.00 |
| 12/15/2008 | $6,100.00 |
| 12/24/2008 | $1,750.00 |
| 01/05/2009 | $3,515.00 |
| 02/05/2009 | $1,250.00 |
| 05/26/2009 | $500.00 |
| 06/22/2009 | $5,000.00 |
| 08/25/2009 | $700.00 |
| 09/08/2009 | $291.66 |
| 09/08/2009 | $4,000.00 |
| 09/08/2009 | $2,000.00 |
| 10/13/2009 | $291.66 |
| 11/10/2009 | $291.66 |
| 12/04/2009 | $291.66 |
| 12/17/2009 | $3,500.00 |
| 01/08/2010 | $291.66 |
| 02/05/2010 | $291.66 |
| 02/09/2010 | $2,000.00 |
| 03/02/2010 | $1,500.00 |
| 03/09/2010 | $291.66 |
| 04/07/2010 | $291.66 |
| 09/29/2010 | $291.66 |
| 09/29/2010 | $291.66 |
| 09/29/2010 | $291.66 |
| 09/29/2010 | $291.66 |
| 10/19/2010 | $19,900.00 |
| **Total:** | **$118,589.92** |

81.    The table above reflects the Trustee's present knowledge of the aggregate amount of transfers made to Lesser by Barkany or his entities. During the course of this proceeding the Trustee may learn (through discovery or otherwise) of additional transfers made by, or on behalf of, Barkany to Lesser. The Trustee is seeking to avoid and recover all such transfers, whether such transfers presently are reflected in the above table or not.

20

Collectively, all transfers made by, or on behalf of, Barkany to or for the benefit of Lesser (whether such transfers presently are reflected in the above table or not) are referred to herein as the "Lesser Transfers".

82.    Defendant Lesser did not provide fair consideration or reasonably equivalent value for the Lesser Transfers it received.

83.    Upon information and belief, most, if not all, of the Lesser Transfers were made using proceeds of the Ponzi Scheme.

84.    Barkany used various means to make the Lesser Transfers to defendant Lesser.  Sometimes, he wrote checks directly to Lesser from various bank accounts in his name or which he controlled.  Upon information and belief, at other times, Barkany may have made direct cash payments to Lesser.

85.    Upon information and belief, although Lesser had known for some time that Barkany was involved in a Ponzi Scheme and that the Lesser Transfers were the fraudulent proceeds of Barkany's Ponzi Scheme, Lesser has refused to disgorge these funds.

86.    Upon information and belief, the Lesser Transfers were made by Barkany with the actual intent to hinder, delay or defraud Barkany's creditors or future creditors.

**J.    Barkany's Transfers to Lowy**

87.    The Trustee has identified transfers during the period from November 2008 through February 2010 totaling at least $478,975.25 from Barkany and the entities he controlled to defendant Lowy.  Those transfers are the following:

| Date | Amount |
|------|--------|
| 11/21/2008 | $8,000.00 |
| 11/21/2008 | $2,580.48 |
| 12/08/2008 | $3,333.33 |
| 12/17/2008 | $200,000.00 |
| 12/22/2008 | $7,444.43 |

21

| | |
|---|---|
| 02/17/2009 | $12,375.00 |
| 05/05/2009 | $500.00 |
| 05/06/2009 | $1,666.67 |
| 06/09/2009 | $1,666.67 |
| 07/08/2009 | $100,000.00 |
| 07/08/2009 | $1,666.67 |
| 08/31/2009 | $137,500.00 |
| 12/10/2009 | $575.34 |
| 02/26/2010 | $833.33 |
| 02/26/2010 | $833.33 |
| **Total:** | **$478,975.25** |

88.    The table above reflects the Trustee's present knowledge of the aggregate amount of transfers made to Lowy by Barkany or his entities.  During the course of this proceeding the Trustee may learn (through discovery or otherwise) of additional transfers made by, or on behalf of, Barkany to Lowy.  The Trustee is seeking to avoid and recover all such transfers, whether such transfers presently are reflected in the above table or not.  Collectively, all transfers made by, or on behalf of, Barkany to or for the benefit of Lowy (whether such transfers presently are reflected in the above table or not) are referred to herein as the "Lowy Transfers".

89.    Defendant Lowy did not provide fair consideration or reasonably equivalent value for the Lowy Transfers he received.

90.    Upon information and belief, most, if not all, of the Lowy Transfers were made using proceeds of the Ponzi Scheme.

91.    Barkany used various means to make the Lowy Transfers to defendant Lowy. Sometimes, he wrote checks directly to Lowy from various bank accounts in his name or which he controlled.  Upon information and belief, at other times, Barkany may have made direct cash payments to Lowy.

22

92.    Upon information and belief, although Lowy had known for some time that Barkany was involved in a Ponzi Scheme and that the Lowy Transfers were the fraudulent proceeds of Barkany's Ponzi Scheme, Lowy has refused to disgorge these funds.

93.    Upon information and belief, the Lowy Transfers were made by Barkany with the actual intent to hinder, delay or defraud Barkany's creditors or future creditors.

**K.    Barkany's Transfers to Shulman**

94.    The Trustee has identified transfers during the period from April 2010 through September 2010 totaling at least $263,469.63 from Barkany and the entities he controlled to defendant Shulman.  Those transfers are the following:

| Date | Amount |
|------|--------|
| 04/29/2010 | 146,743.21 |
| 09/07/2010 | 25,000.00 |
| 09/07/2010 | 25,000.00 |
| 09/08/2010 | 25,000.00 |
| 09/08/2010 | 25,000.00 |
| 09/08/2010 | 16,726.42 |
| **Total:** | **$263,469.63** |

95.    The table above reflects the Trustee's present knowledge of the aggregate amount of transfers made to Shulman by Barkany or his entities.  During the course of this proceeding the Trustee may learn (through discovery or otherwise) of additional transfers made by, or on behalf of, Barkany to Shulman.  The Trustee is seeking to avoid and recover all such transfers, whether such transfers presently are reflected in the above table or not. Collectively, all transfers made by, or on behalf of, Barkany to or for the benefit of Shulman (whether such transfers presently are reflected in the above table or not) are referred to herein as the "Shulman Transfers".

23

96.    Defendant Shulman did not provide fair consideration or reasonably equivalent value for the Shulman Transfers it received.

97.    Upon information and belief, most, if not all, of the Shulman Transfers were made using proceeds of the Ponzi Scheme.

98.    Barkany used various means to make the Shulman Transfers to defendant Shulman.  Sometimes, he wrote checks directly to Shulman from various bank accounts in his name or which he controlled.  Upon information and belief, at other times, Barkany may have made direct cash payments to Shulman.

99.    Upon information and belief, although Shulman had known for some time that Barkany was involved in a Ponzi Scheme and that the Shulman Transfers were the fraudulent proceeds of Barkany's Ponzi Scheme, Shulman has refused to disgorge these funds.

100.    Upon information and belief, the Shulman Transfers were made by Barkany with the actual intent to hinder, delay or defraud Barkany's creditors or future creditors.

**L.    Barkany's Transfers to Whitefish**

101.    The Trustee has identified transfers during the period from February 2009 through October 2009 totaling at least $51,256.00 from Barkany and the entities he controlled to defendant Whitefish.  Those transfers are the following:

| Date | Amount |
|---|---|
| 02/10/2009 | $21,000.00 |
| 02/1012009 | $5,250.00 |
| 08/05/2009 | $8,561,00 |
| 10/23/2009 | $15,125.00 |
| 10/23/2009 | $1,320.00 |
| **Total:** | **$51,256.00** |

24

102. The table above reflects the Trustee's present knowledge of the aggregate amount of transfers made to Whitefish by Barkany or his entities. During the course of this proceeding the Trustee may learn (through discovery or otherwise) of additional transfers made by, or on behalf of, Barkany to Whitefish. The Trustee is seeking to avoid and recover all such transfers, whether such transfers presently are reflected in the above table or not. Collectively, all transfers made by, or on behalf of, Barkany to or for the benefit of Whitefish (whether such transfers presently are reflected in the above table or not) are referred to herein as the "Whitefish Transfers".

103. Defendant Whitefish did not provide fair consideration or reasonably equivalent value for the Whitefish Transfers it received.

104. Upon information and belief, most, if not all, of the Whitefish Transfers were made using proceeds of the Ponzi Scheme.

105. Barkany used various means to make the Whitefish Transfers to defendant Whitefish. Sometimes, he wrote checks directly to Whitefish from various bank accounts in his name or which he controlled. Upon information and belief, at other times, Barkany may have made direct cash payments to Whitefish.

106. Upon information and belief, although Whitefish had known for some time that Barkany was involved in a Ponzi Scheme and that the Whitefish Transfers were the fraudulent proceeds of Barkany's Ponzi Scheme, Whitefish has refused to disgorge these funds.

107. Upon information and belief, the Whitefish Transfers were made by Barkany with the actual intent to hinder, delay or defraud Barkany's creditors or future creditors.

25

**M.**      **Barkany's Transfers to Yahad**

108.    The Trustee has identified a transfer in June 2010 totaling at least $633,746.25 from Barkany and the entities he controlled to defendant Yahad.  That transfer is as follows:

| Date | Amount |
|------|--------|
| 06/16/2010 | $633,746.25 |

109.    The table above reflects the Trustee's present knowledge of the amount of transfers made to Yahad by Barkany or his entities.  During the course of this proceeding the Trustee may learn (through discovery or otherwise) of additional transfers made by, or on behalf of, Barkany to Yahad.  The Trustee is seeking to avoid and recover such transfers, whether such Transfer presently are reflected in the above table or not.  Collectively, the transfers made by, or on behalf of, Barkany to or for the benefit of Yahad (whether such Transfer presently are reflected in the above table or not) are referred to herein as the "Yahad Transfers".

110.    Defendant Yahad did not provide fair consideration or reasonably equivalent value for the Yahad Transfers it received.

111.    Upon information and belief, most, if not all, of the Yahad Transfers were made using proceeds of the Ponzi Scheme.

112.    Barkany used various means to make the Yahad Transfers to defendant Yahad.  Sometimes, he wrote checks directly to Yahad from various bank accounts in his name or which he controlled.  Upon information and belief, at other times, Barkany may have made direct cash payments to Yahad.

113.    Upon information and belief, although Yahad had known for some time that Barkany was involved in a Ponzi Scheme and that the Yahad Transfers were the fraudulent proceeds of Barkany's Ponzi Scheme, Yahad has refused to disgorge these funds.

114.    Upon information and belief, the Yahad Transfers were made by Barkany with the actual intent to hinder, delay or defraud Barkany's creditors or future creditors.

## FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
## (Fraudulent Conveyance – New York Debtor & Creditor Law § 273)

115.    The Trustee repeats and realleges each of the allegations set forth in paragraphs 1 through 114 hereof as if fully set forth herein.

116.    Upon information and belief, there exists at least one creditor holding a claim that is allowable under section 502 of the Bankruptcy Code, who would have standing to assert a claim under section 273 of the New York Debtor and Creditor Law (the "NYDCL").

117.    At the time of the Transfers, Barkany was insolvent or was rendered insolvent as a result of the Transfers.

118.    Barkany did not receive fair consideration for the Transfers.

119.    The Transfers constitute fraudulent conveyances under section 273 of the NYDCL.

120.    The Trustee may avoid the Transfers pursuant to section 544 of the Bankruptcy Code and section 273 of the NYDCL.

121.    Accordingly, pursuant to sections 550 and 551 of the Bankruptcy Code, defendants are liable to the Trustee and the Trustee is entitled to judgment avoiding the Transfers and judgment against: (a) Bloom in an amount to be determined at trial, but believed to be no less than $583,416.66; (b) Alan Gerson and Wendy Gerson, jointly and

27

severally, in an amount to be determined at trial, but believed to be no less than $528,270.00; (c) Aaron Jungreis and Ruth Jungreis, jointly and severally, in an amount to be determined at trial, but believed to be no less than $3,397,246.81; (d) Katz and Yosha, jointly and severally, in an amount to be determined at trial, but believed to be no less than $319,712.05; (e) Jonathan Leifer in an amount to be determined at trial, but believed to be no less than $3,929,308.05; (f) Murray Leifer and Sarah Leifer, jointly and severally, in an amount to be determined at trial, but believed to be no less than $636,500.01; (g) Lesser in an amount to be determined at trial, but believed to be no less than $118,589.92; (h) Lowy in an amount to be determined at trial, but believed to be no less than $478,975.25; (i) Shulman in an amount to be determined at trial, but believed to be no less than $263,469.63, (j) Whitefish in an amount to be determined at trial, but believed to be no less than $51,256.00; (k) Yahad in an amount to be determined at trial, but believed to be no less than $633,746.25; plus interest and costs against each defendant.

**SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**
**(Fraudulent Conveyance – New York Debtor & Creditor Law § 275)**

122.    The Trustee repeats and realleges each of the allegations set forth in paragraphs 1 through 121 hereof as if fully set forth herein.

123.    Upon information and belief, there exists at least one creditor holding a claim that is allowable under section 502 of the Bankruptcy Code, who would have standing to assert a claim under section 275 of the NYDCL.

124.    Upon information and belief, at the time of the Transfers, Barkany had incurred, believed that he would incur, or was intending to incur, debts beyond his ability to pay as they matured.

125.    Barkany did not receive fair consideration for the Transfers.

126.    The Transfers constitute fraudulent conveyances under section 275 of the NYDCL.

127.    The Trustee may avoid the Transfers pursuant to section 544 of the Bankruptcy Code and section 275 of the NYDCL.

128.    Accordingly, pursuant to sections 550 and 551 of the Bankruptcy Code, defendants are liable to the Trustee and the Trustee is entitled to judgment avoiding the Transfers and judgment against: (a) Bloom in an amount to be determined at trial, but believed to be no less than $583,416.66; (b) Alan Gerson and Wendy Gerson, jointly and severally, in an amount to be determined at trial, but believed to be no less than $528,270.00; (c) Aaron Jungreis and Ruth Jungreis, jointly and severally, in an amount to be determined at trial, but believed to be no less than $3,397,246.81; (d) Katz and Yosha, jointly and severally, in an amount to be determined at trial, but believed to be no less than $319,712.05; (e) Jonathan Leifer in an amount to be determined at trial, but believed to be no less than $3,929,308.05; (f) Murray Leifer and Sarah Leifer, jointly and severally, in an amount to be determined at trial, but believed to be no less than $636,500.01; (g) Lesser in an amount to be determined at trial, but believed to be no less than $118,589.92; (h) Lowy in an amount to be determined at trial, but believed to be no less than $478,975.25; (i) Shulman in an amount to be determined at trial, but believed to be no less than $263,469.63, (j) Whitefish in an amount to be determined at trial, but believed to be no less than $51,256.00; (k) Yahad in an amount to be determined at trial, but believed to be no less than $633,746.25; plus interest and costs against each defendant.

## THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Fraudulent Conveyance – New York Debtor & Creditor Law DCL § 276)

129. The Trustee repeats and realleges each of the allegations set forth in paragraphs 1 through 128 hereof as if fully set forth herein.

130. Upon information and belief, there exists at least one creditor holding a claim that is allowable under section 502 of the Bankruptcy Code, who would have standing to assert a claim under section 276 of the NYDCL.

131. The Transfers were made with the actual intent to hinder, delay or defraud Barkany's present or future creditors.

132. The Transfers constitute fraudulent conveyances under section 276 of the NYDCL.

133. The Trustee may avoid the Transfers pursuant to section 544 of the Bankruptcy Code and section 276 of the NYDCL.

134. Accordingly, pursuant to sections 550 and 551 of the Bankruptcy Code, defendants are liable to the Trustee and the Trustee is entitled to judgment avoiding the Transfers and judgment against: (a) Bloom in an amount to be determined at trial, but believed to be no less than $583,416.66; (b) Alan Gerson and Wendy Gerson, jointly and severally, in an amount to be determined at trial, but believed to be no less than $528,270.00; (c) Aaron Jungreis and Ruth Jungreis, jointly and severally, in an amount to be determined at trial, but believed to be no less than $3,397,246.81; (d) Katz and Yosha, jointly and severally, in an amount to be determined at trial, but believed to be no less than $319,712.05; (e) Jonathan Leifer in an amount to be determined at trial, but believed to be no less than $3,929,308.05; (f) Murray Leifer and Sarah Leifer, jointly and severally, in an amount to be determined at trial, but believed to be no less than $636,500.01; (g) Lesser in

an amount to be determined at trial, but believed to be no less than $118,589.92; (h) Lowy in an amount to be determined at trial, but believed to be no less than $478,975.25; (i) Shulman in an amount to be determined at trial, but believed to be no less than $263,469.63, (j) Whitefish in an amount to be determined at trial, but believed to be no less than $51,256.00; (k) Yahad in an amount to be determined at trial, but believed to be no less than $633,746.25; plus interest and costs against each defendant.

## FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Attorneys' Fees – New York Debtor & Creditor Law § 276-a)

135.    The Trustee repeats and realleges each of the allegations set forth in paragraphs 1 through 134 hereof as if fully set forth herein.

136.    Pursuant to section 276-a of the NYDCL, the Trustee is entitled to receive his reasonable attorneys' fees and have judgment entered in such amount jointly and severally against each defendant.

## FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT SHULMAN
### (Objection to the Claims)

137.    The Trustee restates and realleges the allegations of paragraphs 1 through 136 hereof as if fully set forth herein.

138.    On February 26, 2016, Shulman filed a general unsecured proof of claim no. 6 asserting a claim in the amount of $263,469.63 (the "Shulman Claim") based upon potential monetary losses resulting from an action against Shulman and others entitled *Barkany Asset Recovery and Management LLC v. Bloom* pending in the New York State Supreme Court, which action was removed to the United States District Court for the Southern District of New York.

31

139.    Shulman is an individual from which property is recoverable under section 550 of the Bankruptcy Code and is the transferee of the Shulman Transfers avoidable under section 544 of the Bankruptcy Code.

140.    Shulman has not paid the amount, or turned over such property, for which he is liable under section 550 of the Bankruptcy Code.

141.    Accordingly, the Shulman Claim should be disallowed until Shulman repays in full to the Trustee the amount of the Schulman Transfers received by him pursuant to section 502(d) of the Bankruptcy Code.

### SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS MURRAY LEIFER AND SARAH LEIFER (Objection to the Claims)

142.    The Trustee restates and realleges the allegations of paragraphs 1 through 141 hereof as if fully set forth herein.

143.    On April 21, 2016, Murray Leifer and Sarah Leifer filed proof of claim no. 23 asserting a claim in the amount of $636,500.01 (the "Murray/Sarah Leifer Claim) based upon potential monetary losses resulting from an action against them and others entitled *Barkany Asset Recovery and Management LLC v. Bloom* pending in the New York State Supreme Court, which action was removed to the United States District Court for the Southern District of New York.

144.    Murray Leifer and Sarah Leifer are individuals from which property is recoverable under section 550 of the Bankruptcy Code and are transferees of Murray/Sarah Leifer Transfers avoidable under section 544 of the Bankruptcy Code.

145.    Murry Liefer and Sarah Leifer have not paid the amount, or turned over such property, for which they are liable under section 550 of the Bankruptcy Code.

146.    Accordingly, the Murray/Sarah Leifer Claim should be disallowed until Murray Leifer and Sarah Leifer repays in full to the Trustee the amount of the Murray/Sarah Transfers received by them pursuant to section 502(d) of the Bankruptcy Code.

### SEVENTH CLAIM FOR RELIEF AGAINST
### DEFENDANT JONATHAN LEIFER
#### (Objection to the Claims)

147.    The Trustee restates and realleges the allegations of paragraphs 1 through 146 hereof as if fully set forth herein.

148.    On April 21, 2016, Jonathan Leifer filed a general unsecured proof of claim no. 24 asserting a claim in the amount of $3,929,380.00 (the "Jonathan Leifer Claim) based upon potential monetary losses resulting from an action against Jonathan Leifer and others entitled *Barkany Asset Recovery and Management LLC v. Bloom* pending in the New York State Supreme Court, which action was removed to the United States District Court for the Southern District of New York.

149.    Jonathan Leifer is an individual from which property is recoverable under section 550 of the Bankruptcy Code and is a transferee of the Jonathan Leifer Transfers avoidable under section 544 of the Bankruptcy Code.

150.    Jonathan Leifer has not paid the amount, or turned over such property, for which he is liable under section 550 of the Bankruptcy Code.

151.    Accordingly, the Jonathan Leifer Claim should be disallowed until Jonathan Leifer repays in full to the Trustee the amount of the Jonathan Leifer Transfers received by him pursuant to section 502(d) of the Bankruptcy Code.

## EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANT LOWY
### (Objection to the Claims)

152.   The Trustee restates and realleges the allegations of paragraphs 1 through 151 hereof as if fully set forth herein.

153.   On April 21, 2016, Lowy filed a general unsecured proof of claim no. 25 asserting a claim in the amount of $478,975.00 (the "Lowy Claim) based upon potential monetary losses resulting from an action against Lowy and others commenced entitled *Barkany Asset Recovery and Management LLC v. Bloom* pending in the New York State Supreme Court, which action was removed to the United States District Court for the Southern District of New York.

154.   Lowy is an individual from which property is recoverable under section 550 of the Bankruptcy Code and is a transferee of Lowy Transfers avoidable under section 544 of the Bankruptcy Code.

155.   Lowy has not paid the amount, or turned over such property, for which he is liable under section 550 of the Bankruptcy Code.

156.   Accordingly, the Lowy Claim should be disallowed until Lowy repays in full to the Trustee the amount of the Lowy Transfers received by him pursuant to section 502(d) of the Bankruptcy Code.

**WHEREFORE**, the Trustee demands judgment as follows:

A.   That the Transfers be avoided and set aside as fraudulent conveyances; and

B.   That judgment be entered in favor of the Trustee and against each defendant, plus interest pursuant to law from the date of each Transfer sought to be avoided and costs, as follows:  (a) Bloom in an amount to be determined at trial, but believed to be no less than $583,416.66; (b) Alan Gerson and Wendy Gerson, jointly and severally, in an amount to be

34

determined at trial, but believed to be no less than $528,270.00; (c) Aaron Jungreis and Ruth Jungreis, jointly and severally, in an amount to be determined at trial, but believed to be no less than $3,397,246.81; (d) Katz and Yosha, jointly and severally, in an amount to be determined at trial, but believed to be no less than $319,712.05; (e) Jonathan Leifer in an amount to be determined at trial, but believed to be no less than $3,929,308.05; (f) Murray Leifer and Sarah Leifer, jointly and severally, in an amount to be determined at trial, but believed to be no less than $636,500.01; (g) Lesser in an amount to be determined at trial, but believed to be no less than $118,589.92; (h) Lowy in an amount to be determined at trial, but believed to be no less than $478,975.25; (i) Shulman in an amount to be determined at trial, but believed to be no less than $263,469.63, (j) Whitefish in an amount to be determined at trial, but believed to be no less than $51,256.00; (k) Yahad in an amount to be determined at trial, but believed to be no less than $633,746.25;

C.    That judgment be entered in favor of the Trustee and against each defendant awarding the Trustee his reasonable and actual attorneys' fees, costs and disbursement incurred in the prosecution of this adversary proceeding in an amount to be determined by the Court;

D.    That the Shulman Claim be disallowed until the Shulman Transfers are repaid to the Trustee pursuant to section 502(d) of the Bankruptcy Code;

E.    That the Murray/Sarah Leifer Claim be disallowed until the Murray/Sarah Leifer Transfers are repaid to the Trustee pursuant to section 502(d) of the Bankruptcy Code;

F.    That the Jonathan Leifer Claim be disallowed until the Jonathan Leifer Transfers are repaid to the Trustee pursuant to section 502(d) of the Bankruptcy Code;

35

G.    That the Lowy Claim be disallowed until the Lowy Transfers are repaid to the

Trustee pursuant to section 502(d) of the Bankruptcy Code; and

H.    For such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
          September 30, 2016

**HAHN & HESSEN LLP**


By:    /s/ Edward Schnitzer
       Edward Schnitzer
       Maria A. Arnott
       Jeffrey Zawadzki

       488 Madison Avenue
       New York, NY 10022
       (212) 478-7200

       *Attorneys for Plaintiff Mark Frankel, as*
       *Chapter 7 Trustee for the Estate of Gershon*
       *Barkany*